**AMOCO OIL COMPANY, Respondent,**

v.

**FIRST BANK AND TRUST COMPANY, Appellant.**

No. 54616.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 1, 1988.

Kaveney, Beach, Bond, Ullom & Burcke, Terry A. Bond, Clayton, for appellant.

Kathryn M. Koch, Christine F. Miller, St. Louis, for respondent.

CRIST, Judge.

Defendant, First Bank and Trust Company (Bank), appeals the decision of the trial court granting the motion by plaintiff, Amoco Oil Company (Amoco), for summary judgment, wherein the court upheld Amoco's petition for wrongful dishonor of a letter of credit and assessed damages against Bank for the full amount of the letter of credit and interest thereon. We affirm.

From 1983 to 1987, Bank issued yearly irrevocable letters of credit on behalf of Lowe Oil Company with Amoco as the beneficiary. The letter of credit in question herein was issued on January 23, 1987, and was scheduled to expire on January 21, 1988.

On February 16, 1987, Amoco mailed the following letter to Bank:

> In reviewing the current Letter of Credit, I find it does not meet acceptable guidelines.
>
> Enclosed is a copy of the format which is required by Amoco and governed under international law. We ask that you please furnish us with a new Letter of Credit.

Amoco had sent a similar letter to Bank regarding the letter of credit issued in 1986. Bank did not reply to either of these letters.

On June 2, 1987, Amoco sought to collect the draft amount of the letter of credit. Bank refused to honor the letter of credit on the grounds that Amoco's letter of February 16 constituted a rejection of the letter of credit rendering that instrument null and void. On June 10, 1987, Lowe Oil Company filed bankruptcy.

On September 25, 1987, Amoco filed suit for damages for wrongful dishonor of the letter of credit. Both parties filed motions for summary judgment, and as stated earlier, Amoco's motion was granted.

■ Bank is incorporated in the State of Illinois and does business in Cairo, Illinois. Amoco is incorporated in the State of Maryland and maintains offices in Kansas City, Missouri. Because more than one state has contacts with this litigation, we must first determine which State's law to apply. A letter of credit can be characterized as a specialized contract, *see Easton Tire Co. v. Farmers & Merchants Bank*, 642 S.W.2d 396, 398 (Mo.App.1982), thus we look to § 188 of The Restatement (Second) of Conflict of Laws (1971). *Brown v. Brown*, 678 S.W.2d 831, 833 (Mo.App.1984). Applying the criteria set forth in § 188 and noting the letter was drafted in Illinois and was to be paid in Illinois, it appears Illinois has the most significant contacts and thus Illinois law applies. In any event, we note that in matters concerning the Uniform Commercial Code, the law is generally uniform from state to state.

■ The result of this controversy turns on the interpretation given to Amoco's letter of February 16. Bank contends the letter operated as a rejection of the letter of credit and a counter-offer which was never accepted by Bank, leaving Amoco no letter of credit whatsoever. Amoco contends the letter of credit was established by its receipt thereof and its subsequent letter was merely a request for an amendment which was not agreed to by Bank and, therefore, not effective.

The majority of Bank's argument sounds in basic contract law. Although a letter of credit has been characterized as a contract between the issuer and the beneficiary where the issuer agrees to pay the beneficiary upon beneficiary's compliance with the terms of the letter of credit, *Mount Prospect State Bank v. Marine Midland Bank*, 121 Ill.App.3d 295, 298, 76 Ill.Dec. 844, 847[2], 459 N.E.2d 979, 982[2] (1983), a letter of credit is a mercantile specialty and the primary source of the law concerning letters of credit is Article 5 of the Uniform Commercial Code. Uniform Commercial Code—Letters of Credit, ILL.REV.STAT. ch. 26, § 5–101–117 (1961).

The UCC sets up a theoretical framework for dealing with letters of credit independent of the law of contracts. Uniform Commercial Code Comment, ILL.REV. STAT. ch. 26, § 5–101 (1961). In fact, a letter of credit is not defined as a contract but "an engagement by a bank or other person made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." ILL.REV.STAT. ch. 26, § 5–103(1)(a) (1961).

It has been held that "letters of credit are not formal contracts which mandate the standard contractual requirements of offer, acceptance and consideration." *Data General Corp. v. Citizens National Bank of Fairfield*, 502 F.Supp. 776, 784[7] (D.Conn.1980). The concepts of offer and acceptance are not mentioned in Article 5. The UCC provides that a credit is estab-

lished regarding a beneficiary when the letter of credit is received. ILL.REV. STAT. ch. 26, § 5–106(1)(b) (1961).

Applying the law to the facts, the letter of credit was established upon Amoco's receipt of the letter dated January 23, 1987, without need for acceptance on Amoco's part. While Amoco could have rejected this letter by requiring major revisions, *see Data General,* 502 F.Supp. at 781 (letter was rejected because plaintiff asked for major revisions), there is little evidence that is what was intended by the letter of February 16. The February 16 correspondence was no more than a request by Amoco to amend the letter of credit to conform to the format utilized by Amoco. A comparison of the two letters discloses no major differences aside from making the credit subject to the Uniform Customs and Practice for Documentary Credit (1983 Revision), International Chamber of Commerce Publication No. 400. All the terms in the original letter of credit would have remained intact. Amoco's letter was merely a request for an amendment to the original letter of credit and not a rejection of that letter. Because no modification was signed by Bank, the original letter of credit remained in full force. ILL.REV.STAT. ch. 26, § 5–104(1) (1986) (to be effective modification must be signed by the issuer or confirming bank). Therefore, the trial court was correct in granting summary judgment in favor of Amoco.

JUDGMENT AFFIRMED.

CRANDALL, P.J., and REINHARD, J., concur.